**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAWRENCE SHANKLE,** | ) | CASE NO. 1:20CV317 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **CITY OF NORTH ROYALTON, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Corrected Motion (ECF DKT# 25) of Defendants City of North Royalton and Steve Zahursky for Summary Judgment. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

On February 1, 2020, Plaintiff Lawrence Shankle brought the captioned lawsuit against the City of North Royalton Police Department, the City of North Royalton, North Royalton Police Officer Steve Zahursky and five John Doe police officers. Plaintiff has since voluntarily dismissed the North Royalton Police Department, but has yet to identify and serve the John Doe Defendants.

Plaintiff alleges violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, based upon False Arrest, Unlawful Detention, Unlawful Search and Malicious Prosecution. He also brings a state law claim for Intentional Infliction of Emotional Distress ("IIED").

The relevant facts are not in dispute:

At 7:30 a.m. on the morning of October 3, 2018, Plaintiff was driving his recently-purchased Cadillac on Route 82 in the City of North Royalton. Defendant Officer Zahursky activated the flashing lights of his patrol car and pulled Plaintiff over. Defendant approached the vehicle and advised Plaintiff that he stopped him because he did not have a front license plate. When asked, Plaintiff produced his registration and insurance card; but he could not immediately locate his driver's license. Plaintiff reached between the front passenger seats and retrieved the front license plate.

Defendant asked Plaintiff if he was using any drugs or medication and Plaintiff responded "no." Defendant observed that Plaintiff appeared dazed, lethargic and disoriented. Defendant saw marks on Plaintiff's skin, ash residue scattered on the floorboards of the vehicle and a small blue "torch" in the vehicle cup holder. Plaintiff explained that he has nervous conditions which cause him to pick at his own skin and that he is a cigarette smoker who often smokes in his car.

Defendant asked Plaintiff to exit his car. Once outside, Plaintiff refused a search of his person but emptied his pockets. Plaintiff removed his misplaced driver's license and cash totaling $593.00. Plaintiff explained that he supports himself by buying items and selling them online.

At approximately 7:42 a.m., another North Royalton police officer arrived on the scene as back-up. Defendant instructed Plaintiff to walk over to the sidewalk and stand next to the other officer. Plaintiff complied.

Defendant returned to his patrol car and radioed a request for a drug-sniffing canine. Defendant also ran a background check and learned that Plaintiff had a criminal history of drug convictions. At approximately 8:00 a.m., City of Parma Police Sergeant Bobby Jackson arrived with his K-9, Dexter. Dexter alerted at the front driver's side door of Plaintiff's car. Sergeant Jackson then left the scene.

Defendant began to search Plaintiff's vehicle and Plaintiff observed the search from the sidewalk. Defendant found a glass pipe between the driver's seat and the center console, which later tested positive for methamphetamine residue.

Plaintiff was placed under arrest. A search of his person found a knife and a vape pen, which later tested positive for THC oil.

Prior to towing Plaintiff's vehicle, Defendant searched the trunk and found hypodermic syringes, tourniquets, alcohol wipes, bottle caps and twist ties.

Plaintiff denied that the glass pipe and drug paraphernalia found inside the car belonged to him and explained that he had not searched the car thoroughly when he purchased it.

Plaintiff was initially charged with misdemeanors, including improper display of license plates, possession of drug instruments, possession of drug paraphernalia and drug abuse. Plaintiff was later indicted by a grand jury for possession of methamphetamine, a fifth degree felony. The misdemeanors were bound over to Cuyahoga County Common Pleas

Court to be handled along with the felony.

Ultimately, the state court judge accepted the prosecutor's recommendation and amended the Indictment to the minor misdemeanor violation of R.C. § 4503.21(A)(1) - Display of License Plates, Registration Marks and Validation Stickers. Plaintiff pled guilty and was sentenced to time served and a $200.00 fine.[1]

Defendants argue that summary judgment should be granted in their favor because all of Plaintiff's federal claims fail on the merits; Defendant Zahursky is immune based upon the doctrine of qualified immunity; Plaintiff's constitutional rights were not violated and no municipal policy, practice or custom was the moving force behind any alleged violations; estoppel bars a number of Plaintiff's claims; Defendants are immune under R.C. Chapter 2744; and the state claim of Intentional Infliction of Emotional Distress fails because Defendants' actions were not outrageous and Plaintiff suffered no emotional distress.

Plaintiff opposes the Motion for Summary Judgment, contending there are genuine issues of material fact on all of his claims.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must

---

[1] Effective June 30, 2021, it is only a violation to fail to display a license plate on the rear of the motor vehicle.

either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record sua sponte for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n. v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson, 477 U.S. at

251-52).

**42 U.S.C. § 1983**

Plaintiff brings his federal claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must plead both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

**Fourth Amendment**

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . but upon probable cause." U.S. Const. amend. IV.

**Qualified Immunity**

In *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), the United States Supreme Court instructed:

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)

(KENNEDY, J., dissenting) (*quoting Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'is an affirmative defense that must be pleaded by a defendant official.' *Harlow*, 457 U.S. 800 at 815. But qualified immunity "is an immunity from suit rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The analysis of a qualified immunity claim is distinct from the merits of the underlying claim itself. *Saucier v. Katz*, 533 U.S. 194, 204 (2001); *Dunigan v. Noble*, 390 F.3d 486, 491 n.5 (6th Cir. 2004). "Qualified immunity is a purely legal question which must be determined early in the proceedings." *Saucier*, 533 U.S. at 200.

The defendants bear the initial burden of coming forward with facts which suggest that they were acting within the scope of their discretionary authority at the time in question. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). The burden then shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Cartwright v. City of Marine City*, 336 F.3d 487, 490-491 (6th Cir. 2003).

Generally, courts apply a three-pronged qualified immunity test:

First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.

Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Lovett v. Lucas*, No. 1:08CV1253, 2012 WL 13171308, *12-13 (N.D.Ohio Jan. 4, 2012).

"A motion for summary judgment on qualified immunity grounds must be granted unless the plaintiff can satisfy both prongs of the *Saucier* test, including the requirement that what the official allegedly did was objectively unreasonable in light of some clearly established constitutional right." *Lovett*, *13; See *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

A court may exercise its discretion in determining which prong of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson, supra*.

**Abandoned claims**

In his Opposition Brief (ECF DKT #29), Plaintiff fails to address Defendants' contentions regarding his federal Malicious Prosecution (unlawfully charged with drug offenses) claim and his state law IIED claim.

"If a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470 at *2 (6th Cir.1989) (unpublished table

-8-

decision).

As the Sixth Circuit instructs, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) (citation and internal quotation marks omitted). Plaintiff put forward no developed argument on the issues of malicious prosecution and IIED; so, the Court deems the claims abandoned and finds in favor of Defendants without further consideration.

**False Arrest**

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, Ohio, 412 F.3d 669, 677 (6th Cir.2005). "Probable cause" is defined as a probability or substantial chance of criminal activity, not an actual showing of such activity." *United States v. Wright*, 16 F.3d 1429, 1438 (6th Cir. 1994) (*citing Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Plaintiff maintains that a reasonable jury could find that Defendant Zahursky violated his Fourth Amendment rights and his right to be protected from continued unlawful detention beyond the scope of the original traffic stop.

As an initial matter, violation of R.C. § 4503.21 is a minor misdemeanor for which a citation may issue, but which does not normally result in an arrest. However: "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Plaintiff admittedly had

..

his front license plate inside the car rather than displayed on his vehicle; so, the traffic stop was lawful under the Fourth Amendment.

Defendant's questioning of Plaintiff as to where he was traveling to and from was permissible and did not overly prolong the stop. *U.S. v. Everett*, 601 F.3d 484, 491 (6th Cir. 2010). The "touchstone of any Fourth Amendment analysis is reasonableness." *Id.* at 493.

Plaintiff argues that instead of writing a citation, Defendant improperly extended the stop. "Once the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *U.S. v. Mesa*, 62 F.3d 159, 163 (6th Cir. 1995).

As of October 3, 2018, Defendant had been a police officer for at least fourteen years and had been specifically trained in drug interdiction. (Zahursky Deposition, ECF DKT #21 at 4). That morning, Defendant observed that Plaintiff's pupils were constricted and that he appeared dazed, lethargic, disoriented and nervous. Plaintiff also had marks on the skin of his arms and face. Defendant saw, in plain view, a blue "torch" in the cup container and ashes scattered on the floor of Plaintiff's vehicle. When Plaintiff emptied his pockets, Defendant saw that Plaintiff had a large "wad" of cash. These observations, combined with Defendant's law enforcement experience, created the necessary reasonable suspicion to continue Plaintiff's detention.

Defendant checked Plaintiff's identity and criminal record in the law enforcement data base and learned that Plaintiff had three or four prior drug suspensions, which were since closed. (Zahursky Deposition, ECF DKT #21 at 27). In light of his observations and the

background check, Defendant radioed for a canine handler.

"[C]onducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy." *Illinois v. Caballes,* 543 U.S. 405, 408 (2005).

Sergeant Bobby Jackson from the City of Parma Police Department arrived approximately fifteen minutes later with his K-9, Dexter. Jackson spoke with Defendant, assessed the situation and agreed that the use of the drug-detecting canine was justified. (Sergeant Bobby Jackson Deposition, ECF DKT #23 at 12, 14). Dexter proceeded around the perimeter of Plaintiff's car and alerted at the front driver's side door.

Following up, Defendant searched the front seat area of Plaintiff's car and retrieved a glass pipe from between the seats. Defendant searched the trunk and recovered a bag with needles, tourniquets, alcohol wipes and twist ties. The subsequent search of Plaintiff's person turned up a knife and vape pen.

"In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement." *Caballes*, 543 U.S. at 409.

Moreover, an alert by a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for a search of the vehicle. *United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir.1994).

The Court agrees with Defendant that each stage of the traffic stop, detention and

search was justified by reasonable suspicion.  Plaintiff admits that he did not properly display his front license plate.  Thus, an arrest for the traffic violation was supported by probable cause.  *Atwater, supra*.  Defendant had a reasonable suspicion justifying the use of a narcotics dog and the K-9's alert sufficiently established probable cause to search Plaintiff's vehicle.  *Diaz, supra*.

Plaintiff's claim of False Arrest cannot stand because Defendant acted with probable cause.  In addition, Plaintiff ultimately entered a plea and was found guilty of the traffic offense.  He is estopped from complaining about false arrest now in this § 1983 action.

> Plaintiffs may not have things both ways; they are not entitled to receive the benefit of their guilty pleas, and then without consequence argue in these civil cases that their guilty pleas given under oath and with the advice of counsel do not bar their claims for false arrest under Section 1983."  *Lovett v. Lucas*, No. 1:08CV1253, 2012 WL 13171308, *19 (N.D. Ohio Jan. 4, 2012)

Having viewed the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff fails to show that a constitutional violation occurred.  Therefore, Defendant Zahursky is entitled to qualified immunity.

**Municipal Liability**

Plaintiff asserts that Defendant City of North Royalton tolerated or ignored the unlawful actions of its employee, Defendant Zahursky, during the relevant time frame in 2018.  Thus, Plaintiff argues that Defendant City is liable for violating his constitutional rights pursuant to the authority of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Defendant Zahursky was indicted on March 8, 2019 in the Cuyahoga County Court of Common Pleas for Perjury, Tampering with Evidence and Falsification while performing his

duties as a police officer during the time period of April 6, 2018 to October 22, 2018. On November 11, 2019, Defendant Zahursky pled guilty to Obstructing Official Business.

A city or municipality may only be held liable for the constitutional violations of its employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself. *Monell*. There are four types of municipal action that, if they cause the underlying constitutional violation, can establish liability under a *Monell* claim: 1) legislative enactments or official policy; 2) actions by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance of rights violations. *France v. Lucas*, No. 1:07CV3519, 2012 WL 5207555, at *12 (N.D. Ohio Oct. 22, 2012), aff'd, 836 F.3d 612 (6th Cir. 2016).

The United States Supreme Court has held, a "plaintiff must identify a municipal 'policy' or 'custom' that caused the injury," in order to subject a municipality to liability for a constitutional violation under 42 U.S.C. § 1983." *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 397(1997). "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged." *Id.,* citing *Monell*.

Plaintiff has not produced any factual evidence of Defendant City's tolerance, authorization or ratification of unlawful acts such as perjury, tampering with evidence or falsification by its police officers. Plaintiff makes blanket assertions without pointing to specific facts to support one or more of the four municipal actions that can establish *Monell* liability. Plaintiff has not argued that any of the conduct with which Defendant Zahursky was criminally charged occurred on the date of his traffic stop, October 3, 2018. Most

significantly, since the Court has determined that Plaintiff suffered no constitutional violation at the hands of Defendant Zahursky, the *Monell* claim against Defendant City of North Royalton cannot be maintained.  *Peet v. Detroit*, 502 F.3d 557, 566 (6th Cir. 2007).

### III. CONCLUSION

For these reasons, the Corrected Motion (ECF DKT# 25) of Defendants City of North Royalton and Steve Zahursky for Summary Judgment is granted.

The earlier, unamended Motion of Defendants for Summary Judgment (ECF DKT #19) is denied as moot.

Since Plaintiff has neither identified nor served the John Doe Defendants, the Complaint against them will be dismissed unless Plaintiff can show cause in writing by October 1, 2021.

**IT IS SO ORDERED.**

**DATE:** _____

CHRISTOPHER A. BOYKO
Senior United States District Judge